**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| SAMUEL HERNANDEZ and RICHARD MONTOURE, on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| ULTRA ENTERPRISES INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs Samuel Hernandez and Richard Montoure, individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendant Ultra Enterprises Inc. ("Ultra"). Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts, upon the investigation of their counsel, and upon information and belief as to all other matters.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a class of similarly situated purchasers of tickets to the 2020 Ultra Music Festival, an annual festival held in Miami, Florida.

2.      This year, the Ultra Music Festival was scheduled to take place from March 20 to March 22, 2020 in Miami, Florida. Due to the spread of COVID-19, however, the City of Miami and Ultra agreed to postpone the 2020 festival until sometime in 2021.

3.      After learning of the cancellation, Plaintiffs and other similarly situated purchasers contacted Ultra for refunds. Ultra has uniformly denied these requests and offered only to honor tickets during either the 2021 or 2022 Ultra Music Festival, neither of which has been scheduled. Initially, Ultra also gave customers only 30 days to choose which festival they would like to have

their 2020 tickets transferred to, a deadline Ultra repeatedly has extended because Plaintiffs and other Class members are reluctant to agree to defer their tickets in lieu of receiving the refund to which they are entitled.

4.  Accordingly, Plaintiffs bring this action for conversion and unjust enrichment in order to recover amounts paid for tickets to the 2020 Ultra Music Festival.

## PARTIES

### Plaintiff Samuel Hernandez

5.  Plaintiff Samuel Hernandez is a resident of Miami, Florida.

6.  On or about September 24, 2019, Plaintiff Hernandez purchased six tickets to Ultra for approximately $3,000.

7.  On or about March 9, 2020, Plaintiff Hernandez received an email from Ultra with the subject "Ultra Miami 2020 Rescheduled." In the email, Ultra informed Plaintiff that the 2020 festival was cancelled, that he could "transfer" his tickets to either the 2021 or 2022 iteration of the festival by filling out and returning an attached form, and that the offer to defer his tickets to a subsequent year would remain open for only thirty (30) days.

8.  When Plaintiff Hernandez learned that Ultra had been cancelled, he attempted to contact Ultra to obtain a refund for his tickets.

9.  On or about March 10, 2020, Plaintiff Hernandez first attempted to locate a telephone number at which he could call Ultra to obtain a refund, but was unable to locate one. Plaintiff Hernandez then emailed Ultra to request a refund for four of his Ultra tickets

10. On or about March 13, 2020, Ultra responded to Plaintiff Hernandez's email. Ultra ignored Plaintiff Hernandez's refund request and directed him to "fill out the form found in the email [he] received earlier this week to confirm the package of benefits that are being offered."

Ultra also reminded Plaintiff Hernandez that its deferral offer would only remain open until April 8, 2020, and confirmed that it considered all festival tickets non-refundable.

11. On or about March 17, 2020, Plaintiff Hernandez sent an email to Ultra indicating that that he "WILL NOT accept for the 4 tickets that should have never been passed due to incorrect billing address. I ask to find compromise in refunding my 4 and ill accept the 2 other."

12. Because Plaintiff Hernandez did not want to lose the entire value of his Ultra tickets and because Ultra did not provide him any other option, he claimed his benefits for two of his tickets on or about May 20, 2020.

13. As of the filing of this complaint, Plaintiff Hernandez has not received a refund for any of his Ultra tickets.

### Plaintiff Richard Montoure

14. Plaintiff Richard Montoure is a resident of Grayland, Washington.

15. On or about November 23, 2019, Plaintiff Montoure purchased two General Admission 3-day Tier 3 passes to the Ultra Music Festival, paying approximately $1,032.30 inclusive of taxes and fees.

16. On or about March 9, 2020, Plaintiff Montoure received an email from Ultra with the subject "Ultra Miami 2020 Rescheduled." In the email, Ultra informed Plaintiff that the 2020 festival was cancelled, that he could "transfer" his tickets to either the 2021 or 2022 iteration of the festival by filling out and returning an attached form, and that the offer to defer his tickets to a subsequent year would remain open for only thirty (30) days.

17. Plaintiff Montoure does not plan to attend the Ultra festival in 2021 or 2022, so he attempted to contact Ultra in order to secure a full refund.

18. Plaintiff Montoure first attempted to locate a telephone number at which he could call Ultra to obtain a refund, but was unable to locate one. Accordingly, on or about March 18, 2020, Plaintiff Montoure sent an email to Ultra requesting a refund for the purchase price of his tickets.

19. Ultra did not respond to Plaintiff Montoure's refund request.

20. On or about March 27, 2020, Plaintiff Montoure received an email from Ultra informing him of the purported April 9, 2020 deadline to claim his "benefits" for future festivals.

21. Because Plaintiff Montoure did not want to lose the entire value of his Ultra tickets and because Ultra did not provide him any other option, he "claimed [his] benefits" on or about April 7, 2020.

22. Despite claiming his benefits on April 7, 2020, on or about April 9, 2020, Plaintiff Montoure received an email from Ultra indicating that the deadline to claim his benefits was extended from April 9, 2020 to May 7, 2020.

23. Despite claiming his benefits on April 7, 2020, on or about May 4, 2020, Plaintiff Montoure received an email from Ultra indicating that the FINAL deadline to claim his benefits was extended from April 9, 2020 to May 7, 2020.

24. Despite claiming his benefits on April 7, 2020, on or about May 12, 2020, Plaintiff Montoure received an email from Ultra indicating that the deadline to claim his benefits was extended to July 1, 2020.

25. Plaintiff Montoure still has not received a refund for his Ultra tickets.

### Defendant

26. Ultra is a Florida corporation with its principal place of business in Hialeah, Florida.

27. Ultra is a for-profit corporation that organizes and produces an annual music festival in Miami-Dade County, as well as a brick-and-mortar store within and during the festival, and owns and operates www.ultramusicfestival.com and www.ultramerchandise.com.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Ultra.

29. This Court has personal jurisdiction over Ultra because it is formed under the laws of the State of Florida, its corporate headquarters are located in this District, it conducts substantial business in the District, and because a substantial part of the acts and omissions complained of occurred in the District.

30. Venue as to Ultra is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Ultra has its principal place of business in this District, it is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### *The 2020 Ultra Music Festival*

31. The Ultra Music Festival is an annual outdoor festival that focuses heavily on the performance of electronic dance music, and is typically hosted in March, in Miami, Florida.

32. This year, Ultra was scheduled to run from March 20, 2020 to March 22, 2020. Ticket prices ranged from $300 to $400 depending on when the tickets were purchased, with VIP tickets sold for $1,500 (collectively, the "Tickets").

33. On March 2, 2020, as the COVID-19 pandemic rapidly spread, Ultra posted to its social media informing the public that the event would be occurring in "just a few weeks" and that Ultra was preparing the festival grounds for the event.[1]

34. As news of the pandemic spread, the City of Miami and Ultra entered into negotiations in order to reach agreement on postponing the event.[2]

35. Following days of extensive negotiations, on March 4, 2020 the City and Ultra agreed that the 2020 festival would be postponed indefinitely.[3]

36. On March 6, 2020, Ultra announced that due to a purported "directive" from the City of Miami—rather than by mutual agreement of the parties—the Ultra festival would be postponed until March 26 to March 28, 2021.[4] Ultra posted the following message to its Twitter account:

---

[1] https://twitter.com/ultra/status/1234624700271284232 (last visited May 7, 2020).

[2] https://www.miamiherald.com/news/local/community/miami-dade/downtown-miami/article240878956.html (las visited May 7, 2020).

[3] *Id.*

[4] https://www.miamiherald.com/news/local/community/miami-dade/downtown-miami/article240878956.html (last visited May 7, 2020).

> Dear Ultranauts,
>
> It is with a heavy heart that we inform you that The City of Miami has issued an official directive requiring that the 22nd edition of Ultra Music Festival, originally scheduled for March 20, 21 and 22, 2020 will be postponed to March 26, 27 and 28, 2021. Due to the Florida Governor's declaration of a public health emergency and Centers of Disease Control and Prevention's Interim Guidance for COVID-19, it is impossible for the City to provide access to Bayfront Park at this time.
>
> We completely understand how extremely frustrating this is because so many of you are looking forward to coming to Ultra, having already made travel arrangements.
>
> This is, however, an unprecedented issue which is not being taken lightly, and we must continue to defer to the authorities for guidance. Ultimately, there is no higher priority for us than the health, safety and physical well-being of each of you, together with everyone else involved in the production of the event.
>
> We sincerely thank you for your continued loyalty and patience during this difficult time.
>
> All ticket purchasers will be contacted by email on Monday regarding next steps.
>
> - Team Ultra

37.     On March 10, 2020, in response to mounting requests for refunds for the cancelled 2020 festival, Ultra issued a statement confirming it will not provide refunds for 2020 ticket purchases notwithstanding that by postponing the festival until 2021, the 2020 iteration effectively had been cancelled.[5]

38.     Ultra's statement also informed Plaintiffs and Class members that tickets instead would "be honored at either the 2021 or 2022 Ultra Miami event, at your option. You will have 30 days to choose which Ultra Miami event you want to attend."[6]

---

[5] https://www.miamiherald.com/news/local/community/miami-dade/downtown-miami/article241050006.html (last visited May 7, 2020).

[6] *Id.*

7

### *Ticketing Terms and Conditions*

39. Ultra allows for consumers to purchase different tiers of tickets. An advertisement listing the different tiers of admission is included below.



40. In order to purchase Tickets, Ultra requires purchasers to agree to its Ticketing Terms and Conditions ("TT&C"), a copy of which are attached hereto as **Exhibit A**. The TT&C include several provisions relevant to this action.

41. The TT&C contain a choice-of-law provision that states: "This Agreement shall be governed and construed in accordance with the laws of the state of Florida, notwithstanding any contrary choice-of-law principles, and all claims relating to or arising out of this Agreement or breach thereof."

42. The TT&C also state that "[a]ny proceeding to enforce [the] arbitration agreement must be brought in the state court or, if jurisdiction permits, in the U.S. District Court in the Southern District of Florida with venue lying in Miami-Dade County."

43. The TT&C also include a provision that Ultra "may, in its sole and absolute discretion elect to either issue a full or partial refund to Purchaser, not issue any refunds, or reschedule the Event." The provision also states: "[i]f Issuer elects to issue a refund, the Ticket purchaser of record shall be refunded an amount up to the face value of the Ticket(s) only. If Issuer elects to reschedule the Event for a future date, You shall not be entitled to a refund. Under no circumstances shall You be entitled to a refund of any shipping, handling or other processing and service fees."

44. Through the refund provision, Ultra purports to reserve to itself the right to retain any and all monies paid for tickets regardless of whether Ultra elects to put on the festival, essentially (and impermissibly) rendering its obligations under the TT&C illusory and the agreement itself an unenforceable unilateral option contract.

45. Ultra also purports to reserve to itself the right to "modify, add, remove, supplement, amend, update or revise any of [the] terms and conditions, without advanced notification to" the customer. Ultra failed to provide any limitations on its right to modify the contract with consumers, thereby rendering the TT&C illusory and void in their entirety.

## CLASS ALLEGATIONS

46. Plaintiffs bring this action individually and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

All persons who purchased tickets to the 2020 Ultra Music Festival.

47. In the alternative, Plaintiff brings this class action on behalf of the following State Subclasses:

**The Florida Class**

All Florida residents who purchased tickets to the 2020 Ultra Music Festival.

**The Washington Class**

All Washington residents who purchased tickets to the 2020 Ultra Music Festival.

48. Excluded from the Class(es) are: (a) Defendant; (b) Defendant's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation

49. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Ultra's records.

50. **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to

   a. Whether Ultra should be required to provide refunds for its 2020 festival;
   b. Whether the contract between Ultra and Plaintiffs and the Class contained an impermissible unlimited ability to modify the agreement unilaterally;

      c. Whether the contract between Ultra and Plaintiffs and the Class was illusory and void; and

      d. Whether Ultra was unjustly enriched by its conduct.

51. **Typicality**: Plaintiffs have the same interest in this matter as all Class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiffs' and Class members' claims all arise out Ultra's uniform conduct and statements.

52. **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

53. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Ultra's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

### COUNT I
### CONVERSION
**(On Behalf of the Nationwide Class or, in the alternative, the State Subclasses)**

54. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 53 of this Complaint.

55. Plaintiffs and the Class are entitled to a refund of monies paid in exchange for 2020 Ultra tickets because the festival was cancelled.

56. Plaintiffs and the Class have demanded that Ultra return their property.

57. Ultra has refused to issue refunds to Plaintiffs and the Class, and thus has, unlawfully and without authorization, assumed and exercised dominion and control over that property to the exclusion of, or inconsistent with, the rights of Plaintiffs and the Class.

58. Ultra's conversion has damaged Plaintiffs and the Class in the amount that they paid for 2020 festival tickets.

59. Plaintiffs and the Class are entitled to recover the amount each paid to Ultra for their tickets, as well as attorneys' fees, costs and interest.

### COUNT II
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, in the alternative, the State Subclasses)**

60. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 53 of this Complaint.

61. Plaintiffs and the Class conferred a direct benefit on Ultra by purchasing Tickets.

62. Ultra knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiffs and the Class.

63. Ultra voluntarily accepted and retained these benefits, with full knowledge and awareness that, as a result of Ultra's conduct, Plaintiffs and the Class would not, and did not, receive the benefit of their bargain that had been represented by Ultra and that reasonable consumers would expect.

64. Ultra's retention of these benefits is unjust and inequitable.

65. As a direct and proximate result of Ultra's unjust enrichment, Plaintiffs and the Class are entitled to recover the amount each paid to Ultra for their Tickets, attorneys' fees, costs and interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiffs as the representative of the Class and their counsel as Class Counsel;

C. Award actual damages and equitable monetary relief to Plaintiffs and the Class and/or order Ultra to return to Plaintiffs and the Class the amount each paid to Ultra;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Ultra to issue refunds to any member of the class who requests a refund;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated:  May 26, 2020

Respectfully submitted,

*/s/Adam M. Schachter*
Adam M. Schachter
Florida Bar No. 647101
aschachter@gsgpa.com
Andrew J. Fuller
Florida Bar No. 1021164
afuller@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

Bryan L. Clobes
*(pro hac vice application forthcoming)*
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
205 N. Monroe St.
Media, PA 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

Daniel O. Herrera
*(pro hac vice application forthcoming)*
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
150 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: (312)782-4880
Email: dherrera@caffertyclobes.com

Joseph G. Sauder
*(pro hac vice application forthcoming*)
SAUDER SCHELKOPF LLC
1109 Lancaster Ave.
Berwyn, PA 19312
Telephone: (888)-711-9975
Email: jgs@sstriallawyers.com

*Counsel for Plaintiffs and the Class*